| 82  | 537 |
|-----|-----|
| 151 | 303 |

| 82  | 537 |
|-----|-----|
| 186 | 203 |

# Heslop *versus* Heslop.

1. Demandant counted for dower in certain real estate against defendant and her son. At the trial, the court, against his consent, struck the name of the son from the record, refusing judgment in his favor or to allow his costs. *Held*, that this amendment was broken under the Act of 4th of May 1852.

2. It was not error to receive testimony which alleged the participation of the defendant in an attempt to corrupt the plaintiff's witness.

3. It was error to instruct the jury that "when a party in a cause attempts to manufacture testimony, the jury were justified and warranted in presuming that his case is not well founded."

4. Plaintiff counted for dower in certain real estate of H., deceased, who, as she alleged, was her husband. Defendant, who also claimed to be the wife of H., offered to show that she was entirely ignorant that H. had ever been married to plaintiff when she herself married him; that, at that time, he had no means of his own; that she had an estate of several thousand dollars which he appropriated and invested in the property in which dower in this suit is claimed; and that she had since earned considerable sums of money which were applied to the maintenance of H.'s family. This evidence the court rejected. *Held* to be error.

5. It was not error to instruct the jury that where a husband wilfully deserted his wife or deserted her without cause, that the fact that she would not cross the sea to join him, and that she afterwards fell into immoral practices, would not bar her right to dower.

October 26th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Cambria county*: Of October and November Term 1876, No. 41.

In this action Alice Heslop counted against Mary Heslop and Joseph Heslop for dower in the real estate of Joseph Heslop, Sr., deceased.

[Heslop *v.* Heslop.]

The demandant, Alice Heslop, averred that she was married to Joseph Heslop, Sr., the deceased, in the year 1828, in England; and it was in evidence that about that time, in that country, the demandant and deceased lived together as man and wife for three or four years; that from England they went to Scotland, taking with them a daughter who had been born to them, and that they lived together in Scotland for three or four years more, when the deceased came to this country and took up his residence in Pottsville, in this state. Shortly after the departure of deceased from Scotland, the demandant with her child returned to England, and she and deceased never met thereafter.

It appeared also that while the deceased resided in Pottsville, which was for several years, he lived and cohabited with Mary Heslop, the defendant, whom, it seemed, he had known in England, and that subsequently he moved with her to Johnstown, in this state, where they lived together as man and wife for twenty years, and up to the time of his decease, in 1870.

During this period the property was acquired out of which the demandant claimed to be endowed, and which the deceased by will devised to the defendant for life, and at her death to her son, Joseph Heslop, Jr., born during the cohabitation of Joseph Heslop, Sr., with his mother, Mary Heslop.

At the trial, the court (Dean, P. J.), on motion of plaintiff, struck from the record the name of Joseph Heslop, who, it was alleged, was joined with defendant by mistake; to which amendment Joseph Heslop objected and asked that judgment be entered in his favor and his costs allowed, which objection the court overruled. This action of the court constituted the first assignment of error.

Plaintiff offered to prove by George Rich that at the instance of Joseph Heslop, Jr., the son of defendant, and under promise of pay from the latter for the service, the witness induced William Heslop, the brother of deceased, to come to the house of defendant, where defendant and her son proposed to said William Heslop that they would pay him well and take him to board with them, as an inducement to secure him to be a witness in behalf of defendant; that witness conspired with the son of defendant and others to get William Heslop drunk, to induce him to say something to contradict testimony he had given before an auditor in behalf of the plaintiff; and that at the request of defendant witness had brought whiskey to her house and that said William Heslop was supplied with a bottle and kept drunk; this for the purpose of showing that defendant had tampered with plaintiff's witness.

This testimony, under objection, was admitted and was the second assignment of error.

In commenting upon this testimony, the court charged:—

"It is urged further by plaintiff in reply that money was offered to suborn witnesses or manufacture testimony in the case by Joseph

[Heslop *v.* Heslop.]

Heslop, the son of the defendant. It is urged from the testimony of Rich that he was endeavoring, by improper means, to secure a verdict in his favor. You will remember that Heslop denies everything of this kind. It is for you. Where a party in a cause attempts to manufacture testimony, the jury are justified and warranted in presuming that his case is not well founded. You will consider the testimony on this question and give to it such weight as it may be entitled to."

This portion of the charge was the third assignment of error.

The following offer was made by defendant :—

" The defendant proposes to show by the witness that Joseph Heslop, at the time of his marriage with Mary Heslop, the defendant, was without any means ; that the said Mary had an estate of several thousand dollars, which was brought by them to this country and was invested in the property in which dower is claimed in this suit ; that Mary Heslop, during her residence in Johnstown, was an industrious person, and served as a nurse, whereby she made considerable sums of money for the maintenance of the family of Joseph Heslop, to be followed by proof that Mary Heslop was entirely ignorant that Joseph, her husband, had ever been married to the plaintiff, and never heard of the claim of marriage now set up until after the death of her husband, Joseph Heslop."

This offer, under objection, was excluded and was the fourth assignment of error.

The fifth assignment was to a portion of the charge of the court as follows :—

" We say to you : if Joseph Heslop, senior, wilfully deserted his wife, the fact that she did not cross the seas to join him, or did not offer so to do, would not bar her claim for dower ; or, if without cause he deserted her, thus exposing her to the temptations of the seducer, and she fell into immoral practices, and afterwards led a lewd life, this would not bar her right to dower."

The verdict was for the demandant, and the defendant took this writ, assigning for error the errors heretofore noted.

*Samuel S. Blair*, for plaintiff in error.

*R. L. Johnston* and *D. McLaughlin*, for defendant in error.

Mr. Justice WOODWARD delivered the opinion of the court, January 2d 1877.

In the charge to the jury the court instructed them that " where a party in a cause attempts to manufacture testimony, the jury are justified and warranted in presuming that his case is not well founded." This instruction is the subject of the third assignment of error. While the testimony offered on behalf of a party whom the jury find to have tampered with witnesses should be carefully

[Heslop v. Heslop.]

and even suspiciously scrutinized, yet that testimony is not to be utterly disregarded and set aside, and the verdict be left to rest on a presumption arising from the party's misconduct, however flagrant and however clearly proved. It is manifest that the court did not intend to lay down a rule that would produce such a result, for in the same connection the jury were told to consider the testimony on this question, and give to it such weight as it might be entitled to. Still, the effect of the rule which was stated could easily have been to mislead the jury, and to induce a verdict against evidence which might have been found to be conclusive under a more guarded charge.

Under the peculiar circumstances of this case the evidence specified in the fourth assignment of error ought to have been received. Alice Heslop, the plaintiff below, sought to recover dower in lands of which Joseph Heslop, whom she claimed to have been her husband, died seised. By his will Joseph Heslop devised the land to Mary Heslop, the defendant below, during her life, and after her death to their son, Joseph Heslop, Jr. The plaintiff alleged that she was married in 1828, and the fact of the marriage has been found by the verdict. The substance of the evidence offered by the defendant, which the court rejected, was that she was entirely ignorant that Joseph Heslop had ever been married to the plaintiff when she herself married him; that he had at that time no means of his own; that she had an estate of several thousand dollars, which he appropriated and invested in the property in which dower was claimed in this suit; and that she earned during her residence in Johnstown considerable sums of money, which were applied towards the maintenance of Heslop's family. If Heslop was the husband of the plaintiff, the defendant was certainly not his wife. The second marriage was a mockery and a fraud. It gave to Heslop no right to the possession of the defendant's person and no right to the possession of her property. Even if she gave him her estate, the gift was to a man who had imposed himself upon her as her husband, and his title to it was worse than worthless. She had the right to regain possession of it, wherever it was invested, so long as its identity could be traced, against any claimant under a legal title which he had so iniquitously acquired. Receiving it under the false pretence that he was her husband, he acquired no more right to it in any legal sense than he could have acquired by any other form of fraud or crime. The fact that the defendant acquiesced in the provision made for her in Heslop's will did not bar the right to claim the property for which her money paid. At his death she supposed herself to be his widow. The devise was to her and her son. She accepted it in the belief that she had been an actual and not merely an apparent wife. She permitted her apparent husband to dispose of it by will, just as she had permitted the ownership to pass in his lifetime into his hands. Nor was she

[Heslop *v.* Heslop.]

estopped from the assertion of her title by the proof of the will given at the trial.    The fact that Heslop made it was part of the general evidence given to illustrate his relation to the two women who were the parties in the controversy.    The proof of the marriage of the plaintiff failing, the defendant could claim only under Heslop's will.    The marriage of the plaintiff being established, the defendant had the right to claim the property as her own, if it was bought with the proceeds of her estate.    The rule that a wife cannot acquire property out of moneys earned by her has no application to a case like this.    If the defendant lived with Heslop in the false relation which is alleged as the very ground-work of the plaintiff's suit, her earnings were her own.    The offer did not assert that they were applied to the purchase of the property, but it was competent to show that defendant had not been a burden upon Heslop, and that she had provided for more than her own support.

There is nothing in the other errors assigned to require detailed discussion.    The amendment of the record was one which the courts were empowered to allow by the express terms of the Act of the 4th of May 1852.    The offer of the testimony of George Rich was properly received, for it alleged the participation of the defendant in the attempt to corrupt the plaintiff's witness.    Reel *v.* Elder, 12 P. F. Smith 317, would seem to be authority for the instruction complained of in the fifth assignment.    All necessity for an inquiry into the question of alienage is obviated by the discovery of the record of Heslop's naturalization, a copy of which has been appended to the paper-book of the defendant in error.

Judgment reversed and *venire facias de novo* awarded.