414 A.2d 669
**COMMONWEALTH of Pennsylvania,**

v.

**Raymond KLICK, Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 1979.
Filed Nov. 16, 1979.

62

Clement E. Kisailus, Wilkes-Barre, for appellant.

Joseph P. Giovannini, Jr., Assistant District Attorney, Wilkes-Barre, for Commonwealth, appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

PRICE, Judge:

This appeal arises from appellant's conviction of robbery [1] following a jury trial conducted on October 12, 1977.[2] Finding no merit in the two arguments advanced by appellant in support of this appeal, we affirm the judgment of sentence.

Viewed in the light most favorable to the Commonwealth as verdict winner, the factual basis of the case is as follows. At approximately 2:56 p. m. on May 31, 1977, Jacob Wasserstrom, the manager of the Sheridan Manor Apartment Houses in Wilkes-Barre, was in the supply room of the complex when he heard someone enter the adjacent office. Investigating, he encountered appellant who inquired about the availability of rooms. Mr. Wasserstrom informed appellant that he would be notified when an apartment became available, and when the former turned to procure an appointment book, appellant pulled a gun and said, "This is a holdup." (N.T. 6). The intruder demanded all the money in the office, but Mr. Wasserstrom insisted that none was available. Appellant then forced the manager to open some of the desk drawers, but finding nothing, ordered Mr. Wasserstrom to lie flat in the storage room, after which appellant departed.

■ Appellant's first argument is based on the following sequence of events. On direct examination, Mr. Wasserstrom testified that the intruder wielded a gun with a pearl handle and silver barrel. Subsequently, still during the Commonwealth's case-in-chief, the assistant district attorney proposed to call one Diane Nobel. At side bar, the court was informed that Ms. Nobel would testify to her acquaintance with appellant and to her observance of a gun in his apartment some one year prior to the robbery. Appellant's

1. 18 Pa.C.S. § 3701. Appellant was acquitted on a charge of burglary. (18 Pa.C.S. § 3502).

2. Post-trial motions were subsequently denied and appellant sentenced to a term of imprisonment of from one to four years and ordered to pay the costs of prosecution.

counsel objected to the testimony as incompetent and overly remote from the crime. The trial court sustained the objection with the remark that, "I think it might be more rebuttal than direct. If there ever were a denial of having any gun ownership, it might be relevant, but I think its remote at this time." (N.T. 43–44).

During the direct examination of appellant by his counsel, no mention was made of a gun. On subsequent cross-examination, however, the assistant district attorney queried if appellant ever owned any gun, and specifically, a revolver with a white handle. No objection was made to the question[3] and appellant responded in the negative. The Commonwealth thereafter called Ms. Nobel to the stand on rebuttal, who, over appellant's objection, testified that approximately six months prior to the robbery, she had been in appellant's apartment and had observed a small silver pistol with a white handle laying on a table. She further testified that appellant answered, "No, that's real" when she asked about the gun's authenticity. (N.T. 112).

Appellant now argues that introduction of this information via rebuttal testimony was a case of "prosecutional chicanery." (Brief for Appellant at 7). We might first dispense with that disparaging characterization. The prosecutor was merely conforming his conduct to that earlier suggested by the trial judge, a course certainly not meriting individual condemnation. More importantly, that conduct, whether or not previously suggested, was proper within the context of the trial.

The initial ruling rejecting admission of the evidence in the Commonwealth's case-in-chief was quite correct. In *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974), our supreme court endorsed the following principle:

> "The possession by the defendant of a weapon or implement of crime is relevant even though there is no evidence that it was used in the commission of any particular crime,

---

**3.** The record indicates an immediate objection only to the next series of questions concerning appellant's alleged conversation with one Steve Gaydos. (N.T. 106).

but there must be evidence that some crime was committed.

The possession of ownership of the weapon or implement of crime must be reasonably proximate to the commission of the crime. If too great a period has elapsed between the commission of the crime and the period of possession or ownership, the evidence would be too remote and hence inadmissible." *Id.*, 455 Pa. at 316 n. 8, 314 A.2d at 249 n. 8, *quoting* 1 Torcia, Wharton's Criminal Evidence § 211 at 441–42 (13th ed. 1972).

*See also* Wigmore, Evidence § 88 (3d ed. 1940). Thus, it is logically relevant, and legally probative, to demonstrate that a gun employed in a murder was, some few hours prior to the crime, in the possession of the defendant. Although such information does not conclusively establish the defendant's possession at the critical moment, *i. e.*, the time of the crime, it is nonetheless relevant because the desired inference is made at least more probable by the information. *See Commonwealth v. Chism*, 480 Pa. 233, 389 A.2d 1041 (1978); *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976). As the period between proven possession and the gun's use in the crime lengthens, however, the possibility of the weapon changing ownership or possession in the interim increases, thus steadily reducing the probative worth of the testimony until at some point the connection becomes so tenuous, and the potential prejudice so great, as to outweigh any minimal evidentiary value.

With regard to the maximum span permissible, courts considering the question have insisted that it be no greater than a few days. *See, e. g., Morton v. United States*, 87 U.S.App.D.C. 135, 183 F.2d 844 (D.C.Cir.1950) (possession of gun two weeks prior to crime admitted); *People v. Yee Fook Din*, 106 Cal. 163, 39 P. 530 (1895) (possession of weapon one month after crime not admissible); *State v. Reed*, 206 La. 143, 19 So.2d 28 (1944) (possession of pistol four hours prior to crime admissible); *Hayes v. State*, 3 Md.App. 4, 237 A.2d 531 (1968) (possession of pistol four days before shooting admissible). Instantly, six months was clearly too lengthy a

period to permit introduction of the evidence, and it was initially correctly excluded.

The situation changed, however, when appellant testified that he *never* owned a gun similar to that wielded by the robber. Given that proposition, it was permissible to introduce Ms. Nobel's testimony solely to attack appellant's credibility, not to connect him with either the gun or the crime. The fact that the remoteness of the observance precluded its admission as substantive evidenced is immaterial in the context of impeachment. Appellant made the absolute statement that he never owned such a gun, and consequently, it was permissible to demonstrate in contradiction[4] that at some prior time it was indeed in his possession.

■ Appellant's second argument concerns the testimony of Stephen Gaydos, who stated on rebuttal that some six weeks prior to trial, appellant informed him that he would "take care" of Ms. Nobel, Mr. Gaydos' girlfriend, if she testified; while approximately one week prior to trial, appellant telephoned the Gaydos apartment, where Ms. Nobel was staying, and insisted he would "kill her" if she testified. (N.T. 115–16).

We have little trouble with the admission of such testimony. In *Commonwealth v. Petro*, 115 Pa.Super. 388, 394–95, 176 A. 46, 48 (1934), this court stated that "the Commonwealth may show an attempt by the defendant to intimidate its witnesses: (*Cover v. Com.*, 5 Sadler 79, 8 A. 196; *Com. v. Marion*, 232 Pa. 413, 423, 81 A. 423; *Heslop v. Heslop*, 82 Pa. 537, 541 . . .)." We have just recently reaffirmed the vitality of this rule. *See Commonwealth v. Kramer*, 247 Pa.Super. 1, 371 A.2d 1008 (1977); *Commonwealth v. Pilosky*, 239 Pa.Super. 233, 362 A.2d 253 (1976). The instant testimony was relevant not only to attack the credibility of the witness, but also to prove an inference of guilt on the part of appellant. *See Commonwealth v. Fusci*, 153 Pa.Su-

---

4. We note that while contradiction is not permitted on collateral matters, *see, e. g., Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973), evidence of the possession of the instrument of the crime may not be deemed collateral.

per. 617, 35 A.2d 93 (1943).   The admission of this testimony was therefore proper.

Judgment of sentence affirmed.

SPAETH, J., concurs in the result.